IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
On Briefs March 11, 2003

## JEFFREY L. CAMPORA, ET AL. v. RICHARD DALE FORD

**A Direct Appeal from the Circuit Court for Franklin County**
**No. 11,156-CV     The Honorable Thomas W. Graham, Judge**

---

**No. M2002-01409-COA-R3-CV - Filed March 28, 2003**

---

This case involves a dispute arising from a Promissory Note executed by and between the Appellant/Maker and Appellee/Payee. Specifically, Appellant asserts that he signed the Note in a representative capacity and, therefore, he is not personally liable on the Note. The Circuit Court of Franklin County granted Appellee's Motion for Summary Judgment, entering a Judgment against Appellant for principal, interest, and costs. Appellant appeals from this Judgment. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Gregory M. O'Neal, Winchester, For Appellant, Richard Dale Ford

Gerald L. Ewell,Jr., Tullahoma, For Appellees, Jeffrey L. Campora and Coyle Clark

### OPINION

Plaintiffs, Jeffrey L. Campora ("Mr. Campora," or "Plaintiff") and Coyle Clark, as Co-Trustee of the Credit Shelter Trust under the will of Jerry Campora, deceased, sued defendant, Richard Dale Ford ("Mr. Ford," or "Defendant"), for the balance due on a non-negotiable promissory note. In 1996, Mr. Ford was the President and Chief Operating Officer ("COO") of Sircle Software, L.L.C. ("Sircle"). Sircle was a Tennessee L.L.C. created for the purpose of developing and marketing computer software for teachers. As part of his duties, Mr. Ford was charged with raising investment capital for the operation of the company prior to a proposed stock offering at some point in the future. To that end, Mr. Ford contacted Jeffrey Campora during the fall of 1996.[1] Messrs. Ford and Campora met on several occasions to exchange information about the proposed investment. On November 27, 1996, the parties met at Regions Bank in Tullahoma, Tennessee and executed a

---

[1] Messrs. Ford and Campora were acquaintances who had known each other for over 40 years.

Promissory Note (the "Note"). The Note was signed by Messrs. Ford and Campora and notarized.[2] It reads as follows:

## PROMISSORY NOTE

On ninety days after the date, for value received, I, Richard Dale Ford, promise to pay to the Credit Shelter Trust under the Will of Jerry Campora, 220 N. Jefferson Street, Winchester, TN 37398, the sum of Fifty Thousand Dollars ($50,000.00), with interest thereon in the amount of $5,000.00 for a total principle [sic] and interest payment due and payable in the amount of $55,000.00.

If default is made in the payment of $55,000.00, of this single principle [sic] and interest payment, then the whole sum shall become immediately due and payable at the option of the payee, without notice.

In the event of commencement of suit to enforce payment of this note, I, Richard Dale Ford, agree to pay such additional sums including attorney's fees and Court costs as the Court may adjudge necessary and reasonable.

I, Richard Dale Ford, chief operating officer of Sircle Software LLC, convey to the Credit Shelter Trust under the Will of Jerry Campora, an option to convert the principle [sic] of this promissory note, dated 27 November 1996, to 4% ownership interest in Sircle Software LLC.

This option may be exercised anytime during the ninety day period, but is the option solely of Jeffrey L. Campora, Co-Trustee of the Credit Shelter Trust, and does not include the interest due and payable in conjunction with this promissory note. In any event the $5,000.00 in interest will be due and payable within (90) ninety days.

This note and subsequent option for conversion of principle [sic] shall be governed by the laws of the State of Tennessee.

Agreed this 27 November 1996.

Richard Dale Ford /ss/              Jeffrey L. Campora /ss/
Richard Dale Ford                   Jeffrey L. Campora
President                           Co-Trustee

---

[2] We note that notarization of the instrument was not necessary to secure its legal validity.

Sircle Software        220 N. Jefferson Street
                  Winchester, TN 37398

Two days after the Note was executed, $50,000.00 was wired to Mr. Ford's personal account. On February 27, 1997, Mr. Ford made the $5,000.00 interest payment by personal check. The principal of the Note was not called at that time and, pursuant to the option outlined in Paragraph four of the Note, Mr. Campora elected to have the indebtedness converted to an equity ownership in Sircle. Despite Mr. Campora's attempt to exercise his option under the Note, the principal was not converted into membership or equity interest in Sircle. Sircle was eventually liquidated with no private stock offering ever being made. The Note was, thereby, rendered worthless.[3]

On September 14, 1998, Plaintiff filed suit in the Circuit Court of Franklin County, seeking judgment against Mr. Ford for breach of the Note. On December 12, 1998, Mr. Ford filed an Answer to the Complaint.

Discovery was propounded to Mr. Ford and he did not timely respond. Plaintiff then filed a Motion to Compel. An Agreed Order was entered on March 24, 1999, providing that Mr. Ford answer by April 7, 1999. Mr. Ford failed to answer and a Motion for Sanctions was filed on April 16, 1999. The interrogatories were answered on May 4, 1999.

Mr. Ford received notice for his deposition on January 20, 2000. Mr. Ford failed to appear for his deposition and Plaintiff filed a Motion for Default Judgment on March 20, 2000. On November 28, 2000, the trial court entered an Order Under Penalty of Default, requiring Mr. Ford's appearance at his deposition and awarding attorney's fees to Plaintiff. Mr. Ford was deposed on April 13, 2001.

Both parties filed Motions for Summary Judgment.[4] The trial court heard the Motions on February 26, 2002 and found that there was no genuine issue as to any material fact and that Mr. Campora was entitled to judgment as a matter of law. Judgment was entered on May 13, 2002 against Mr. Ford for principal in the amount of $46,424.00, prejudgment interest in the amount of $22,956.02, and attorney's fees.

Mr. Ford appeals from this Judgment and raises two issues for our review as stated in his brief:

---

[3] Both Plaintiff and Defendant acknowledged that Plaintiff elected to convert the principal due on the Note to an interest in Sircle, but Defendant did not provide the ownership interest and never recognized that Plaintiff had any such ownership interest. There is no contention by Defendant that the attempt to exercise the option to convert the principal of the Note to such an ownership interest affects his alleged personal liability on the Note.

[4] Defendant filed his Motion for Summary Judgment, along with an Affidavit and Memorandum in support thereof, on October 3, 2001. Plaintiffs filed their Motion for Summary Judgment, along with supporting documents, on January 15, 2002.

I.  Whether the trial court committed error by finding the Defendant, Richard Dale Ford, personally liable on the Note when he signed as President?

II.  If the court found the Note to be ambiguous, did it commit error by not allowing extrinsic proof to prove the relationship between the parties?

Resolution of the issues in this case are solely dependent on the construction of the provisions of the Note signed by the parties hereto.  The language used in a contract must be taken and understood in its plain, ordinary, and popular sense.  ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578 (Tenn.1975).  In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning.  ***Ballard v. North American Life & Cas. Co.***, 667 S.W.2d 79 (Tenn. Ct. App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties.  ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn. Ct. App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, ***Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.***, 884 S.W.2d at 462 (citing ***Oman Constr. Co. v. Tennessee Valley Auth.***, 486 F. Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. ***Cookeville P.C.***, 884 S.W.2d at 462 (citing ***Edwards v. Travelers Indem. Co.***, 300 S.W.2d 615, 617-18 (Tenn.1957)).  Courts cannot make contracts for parties but can only enforce the contract that the parties themselves have made.  ***McKee v. Continental Ins. Co.***, 234 S.W.2d 830 (Tenn. 1950).  The interpretation of a written contract is a matter of law and not of fact.  ***See Rainey v. Stansell***, 836 S.W.2d 117 (Tenn. Ct. App. 1992).

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  Tenn. R. Civ.P. 56.04.  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997).  On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.  Summary judgment is a preferred vehicle for disposing of purely legal issues.  ***See Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993); ***Bellamy v. Federal Express Corp.***, 749 S.W.2d 31 (Tenn. 1988).  Since the construction of a written contract involves legal issues, construction of the contract is particularly suited to disposition by summary judgment.  ***Browder v. Logistics Management, Inc.***, 1996 LEXIS Tenn. App. 227 (Tenn. Ct. App. 1996); ***see also Rainey,*** at 119.  Since only questions of law are involved here, there is no presumption of correctness regarding the trial court's grant of summary judgment.  ***Bain*** at 622.  Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court.  ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

We first address Appellant's second issue.  In this case, no documents were signed other than the Note dated November 26, 1996 and no side agreements were made to alter the terms of that Note.  The Note is, therefore, the only evidence that exists concerning the agreement between the parties. As to the issue of whether the trial court erred in not allowing extrinsic evidence as to Mr. Ford's personal liability on the Note, it is generally agreed that the admissibility of parol evidence to prove the intent of the signatory hinges on whether the instrument itself manifests some ambiguity. ***See United American Bank v. First Citizens Nat'l Bank***, 764 S.W.2d 555 (Tenn. Ct. App. 1988).  In general terms, an ambiguity occurs where a word or phrase is capable of more than one meaning when viewed in the context of the entire agreement by an objective and reasonable person. ***See, e.g., Walk-in Medical Ctrs., Inc. v. Breuer Capital Corp.***, 818 F.2d 260, 263 (2d Cir. 1987).  The Note at issue in this case contains no ambiguities; rather, the Note, on its face, appears complete and there is nothing in the document to indicate that Mr. Ford's signature was made in a representative capacity.  It is well established that parol evidence cannot be used to contradict or alter the terms of a written contract that is complete and unambiguous on its face. ***See, e.g., Jones v. Books***, 696 S.W.2d 886 (Tenn.1985); ***Airline Constr., Inc. v. Barr***, 807 S.W.2d 247, 259 (Tenn. Ct. App.1990).  Since the Note contains no ambiguity and since this Court is barred from creating an ambiguity where one does not exist, ***Cookeville P.C., 884 S.W.2d at 462***, this issue is without merit.

Turning to the Appellant's first issue, we reiterate that there is no ambiguity in the Note. Therefore, our determination of whether Mr. Ford is personally liable under the Note rests solely in the plain language of the document.  Notwithstanding the signature line, which, as noted above, contains no indication that Mr. Ford is signing on behalf of Sircle, the language contained in the body of the Note clearly obligates Mr. Ford personally.  Paragraph one of the document states that "I, Richard Dale Ford, promise to pay to the Credit Shelter Trust...the sum of Fifty Thousand Dollars ($50,000.00)...."  Likewise, in Paragraph three of the Note, Mr. Ford is made personally liable by these words: "I, Richard Dale Ford, agree to pay such additional sums including attorney's fees and Court costs...."  It is only in Paragraph 4 that Mr. Ford is referred to as the COO of Sircle.  However, this paragraph does not address the repayment obligations under the Note; rather, Paragraph four concerns Mr. Ford's authority as COO of Sircle to honor Plaintiff's option to convert the principal of the Note to a 4% ownership in the company.  The law concerning contract interpretation is well settled–absent ambiguity, plain language controls.  Considering the document in its entirety, we, as did the trial court, can reach but one conclusion concerning this Note.  Mr. Ford is personally liable for repayment of the principal, interest, and attorney's fees.

For the foregoing reasons, we affirm the order of the trial court granting summary judgment to Plaintiff.  Costs of this appeal are assessed to the Appellant, Richard Dale Ford, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.