## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 29, 2015 Session

## BATTERY ALLIANCE INC. v. T&L SALES INC., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00302513      Jerry Stokes, Judge**

_____

**No. W2015-00201-COA-R3-CV – Filed November 9, 2015**
_____


Plaintiff brought suit after defendant-company defaulted on its obligation to pay for goods it received on credit. Plaintiff also brought a claim for breach of contract against defendant-president and defendant-employee of the defendant-company pursuant to an individual guaranty agreement signed by both. A default judgment was entered against the president of the company, but the employee disputes that he signed the individual guaranty in his individual capacity. The plaintiff moved for summary judgment. The trial court granted summary judgment in favor of plaintiff, concluding that the individual guaranty was unambiguous and the employee was thus liable in his individual capacity. We vacate the trial court's decision granting summary judgment because the individual guaranty is ambiguous and remand with instructions to consider parol evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Drew Davis and Bryce W. Ashby, Memphis, Tennessee, for the appellant, Ryan Stout.

Jerry A. Schatz, Memphis, Tennessee, for the appellee, Battery Alliance, Inc.

## OPINION

## Background

This case involves the interpretation of an individual guaranty agreement between Plaintiff-Appellee Battery Alliance, Inc. ("Battery Alliance") and the defendants, T&L Sales, Inc. ("T&L Sales"), William Stout, and Defendant-Appellant Ryan Stout ("Appellant" or "Ryan"). Battery Alliance is a corporation that markets various types of batteries and related items to independent retail and wholesale entities, including T&L Sales. T&L Sales sold the batteries and related items to the public. William Stout was the President of T&L Sales, and his son, Ryan Stout, was an employee of the company.

On November 10, 2003, T&L Sales submitted an agreement titled "Agreement Regarding Extension of Credit" ("Credit Extension Agreement") requesting certain goods on credit. The amount of credit extended was payable by T&L Sales to Battery Alliance at a future date.[1] This agreement also provides that T&L Sales is obligated to pay Battery Alliance attorney's fees if T&L Sales breaches the agreement. William Stout signed the Credit Extension Agreement and indicated "President" beneath his signature on a line designated for "Title." The Credit Extension Agreement indicates that it was "approved and accepted" by Battery Alliance on November 17, 2003.

Also on November 10, 2003, the parties entered into an Individual Guaranty. The Individual Guaranty provides that the guarantor or guarantors promise to serve as an individual guaranty in exchange for Battery Alliance extending credit to T&L Sales. In addition, the Individual Guaranty obligated the guarantors to pay all costs, expenses, and attorney's fees that Battery Alliance may incur in connection with attempting to collect any debts. The end of the individual guaranty agreement contains four typewritten signature lines, with the following four typewritten designations: (1) Battery Alliance, Inc., (2) Name and Position, (3) Guarantor Signature Required, and (4) Guarantor's Spouse Signature Required. On the first line designated "Battery Alliance, Inc.," one W.A. Wilson signed his name presumably as a representative of Battery Alliance. On the next line, near "Name and Position," W.A. Wilson printed "W.A. Wilson, President." On the line designated "Guarantor Signature Required," William Stout signed his name. The next line, designated "Guarantor's Spouse Signature Required," includes a dash (–) and no signature. In the blank white space beneath the signature lines, Appellant hand drew a separate line, signed his name, and handwrote "Secretary" beneath the line. The Individual Guaranty includes an integration clause.

Although the date of default is not clear from the record, the parties do not dispute that T&L Sales subsequently defaulted in its repayment of the debt owed pursuant to the Credit

---

[1] The Credit Extension Agreement stated that the "entire balance for purchases made on credit is due and must be received at the home office within ten (10) days following the end of the billing cycle." The parameters for Battery Alliance's billing cycle are not specified; however, neither party disputes that the time for repayment had passed at the time Battery Alliance brought suit.

Extension Agreement. The record contains numerous email messages between William Stout and Noel Sutton, the Vice President of Finance for Battery Alliance. In February 2010, Mr. Sutton began communication with William Stout about the large balance due on the T&L Sales account, which amounted to nearly $120,000.00. Due to William Stout's repeated assurances that the debt would be satisfied, Mr. Sutton refrained from sending the matter to a collection agency or pursuing legal action. T&L Sales eventually dissolved on April 15, 2010. The record indicates that the last payment made by T&L Sales was in November 2010 in the amount of $2,500.00. Eventually in May 2013, Mr. Sutton referred the matter to an attorney to pursue collection.

On July 16, 2013, Battery Alliance filed an action against T&L Sales, William Stout individually, and Appellant individually.[2] The complaint alleged that William Stout and Appellant both breached the terms of the Individual Guaranty by failing to pay Battery Alliance in accordance with its terms. Battery Alliance sought compensatory damages plus costs and attorney's fees. An Answer to the complaint was not forthcoming from defendants, and Battery Alliance filed a motion for default judgment against all defendants on October 30, 2013.

On December 13, 2013, counsel for Appellant entered a notice of appearance and simultaneously filed a motion to dismiss the claims against Appellant. In the motion to dismiss, he argued that the agreement was ambiguous because it was not clear in what capacity he signed. Appellant asserts that he signed the agreement in his capacity as Secretary for T&L Sales and not in his individual capacity. Accordingly, he asserted that he could not be held liable pursuant to the Individual Guaranty.

On December 20, 2013, the trial court granted Battery Alliance's motion for default judgment against William Stout only.[3] Subsequently, on January 8, 2014, Battery Alliance filed its response to Appellant's motion to dismiss. On January 28, 2014, the trial court denied Appellant's motion to dismiss.

Appellant subsequently filed his Answer to the complaint on February 10, 2014. Between February 2014 and April 2014, the parties propounded and answered discovery in the form of requests for production and interrogatories. On June 10, 2014, Battery Alliance filed a motion for summary judgment against Appellant. With its motion, Battery Alliance filed a Statement of Material Undisputed Facts and a memorandum of law. Battery Alliance argued that summary judgment was proper because the Individual Guaranty unambiguously bound Appellant individually to the obligation to repay the debt.

---

[2] On February 19, 2015, the suit against T&L Sales was voluntarily non-suited. Thus, it is not a party to this appeal. This Opinion references T&L Sales only to provide a full recitation of the facts.
[3] The trial court subsequently entered judgment on February 26, 2014 against William Stout in the amount of $167,525.11, including attorney's fees.

3

Additionally, with its motion, Battery Alliance filed the affidavits of Noel Sutton and Tom Wilson, an Account Executive for Battery Alliance, Inc. who previously served as a Customer Service Representative for Battery Alliance. In his affidavit, Mr. Sutton asserted that it had always been the "policy, practice and standard operating procedure of the corporation that, at the inception of a relationship between [Battery Alliance] and a customer, the customer is required to submit an individual personal guaranty, guaranteeing the payment of all monies due and owing to Battery Alliance, Inc. . . . ." However, he stated that Battery Alliance "has never required the signature of an individual signing a personal guaranty with our firm to be witnessed or notarized." In Mr. Wilson's affidavit, he stated that he was a Customer Service Representative at the time the Individual Guaranty was signed. He additionally asserted that he had "no knowledge of any communications indicating that the signature of Ryan Stout on the Individual Guaranty . . . was affixed in any capacity other than that of an individual guarantor . . . ."

On July 7, 2014, Appellant filed a motion seeking to compel discovery from Battery Alliance and continue the date upon which his response to the motion for summary judgment was due. Specifically, he sought to obtain from Battery Alliance copies of other Individual Guaranty agreements that Battery Alliance entered into with other parties not at issue in this litigation. Appellant argued that these documents would show whether Battery Alliance had a practice of requiring the signature of a witness, which he contended was the purpose of his signature.[4] He further contended that Battery Alliance's refusal to produce such documents warranted an extension of time in which he had to respond to the motion for summary judgment. Battery Alliance responded on July 23, 2014, arguing that the extraneous agreements Battery Alliance made with non-parties constituted inadmissible parol evidence.

On August 1, 2014, the trial court entered an order granting in part and denying in part Ryan Stout's motion to compel discovery and continue the time in which to respond to the motion for summary judgment. Specifically, the trial court ordered Battery Alliance to comply with Appellant's request for production of certain copies of extraneous Individual Guaranty agreements. However, it was only ordered to produce agreements entered into between January 1, 2003 and November 10, 2003. Further, the trial court granted Appellant thirty (30) days from the date of the inspection of the documents to file a response to the motion for summary judgment.[5]

---

[4] Despite having previously filed pleadings in this matter suggesting he signed in a representative capacity, Ryan Stout first brought up the allegation that he was required to sign specifically as a witness in the discovery exchanged between the parties in April 2014.

[5] The documents requested by Ryan Stout do not appear in the technical record on appeal. It is well-settled that the appellant bears the burden of preparing the record for the appellate court. *Jones v. Lemoyne Owen College*, 308 S.W.3d 894, 902 (Tenn. Ct. App. 2009).

On October 14, 2014, Appellant filed his response to the motion for summary judgment. He asserted that he did not sign in his individual capacity, but only as a witness to his father's signature. In his response, he alleged:

> Prior to entering the Individual Guaranty agreement with BAI, William Stout was instructed by Noel Sutton to have someone witness his signature on the document. Mr. Sutton stated that he could have a notary witness his signature, or, alternatively, could have an employee sign as a witness with the designation of "Secretary" to indicate that they were only signing as a witness. William Stout approached Defendant Ryan Stout, explained Mr. Sutton's instructions, and requested that Defendant sign the agreement, with the designation of "Secretary," as a witnessing signature. Defendant did so, as instructed by his father, on November 10, 2003, without even reading the language of the Individual Guaranty.

Accordingly, he argued that the signature on the final page of the agreement was ambiguous as to in which capacity he signed the document. He contended that the dispute concerning whether he signed as a mere witness, and not a guarantor, constituted a genuine dispute of material fact, which precluded summary judgment. In addition, Ryan Stout filed a response to Battery Alliance's statement of undisputed facts. Also attached to his response was his father's affidavit, explaining that Appellant never served as a corporate officer of T&L Sales and that a Battery Alliance representative told William Stout that Appellant could sign as a witness and include the designation "Secretary." Specifically, William Stout's affidavit provides:

> 6. On November 10, 2003, the day that I executed the Individual Guaranty, Noel Sutton informed me over the telephone that the Individual Guaranty would need to be signed by another party as a witness to my signature.
>
> 7. On the same day, Mr. Sutton stated that I could have a notary public witness my signature, or, alternative, I could have an employee of [T&L Sales] sign as a witness with their [sic] name and the designation of "Secretary."
>
> 8. I stated that Ryan was present at the office and could sign as a witness and Mr. Sutton indicated that Ryan's signature with the designation of "Secretary" was sufficient to serve as a witnessing signature.

9. I took the Individual Guaranty agreement to Ryan immediately thereafter and he signed at the bottom of the signature page in blank space below my signature. I do not recall Ryan reading the Individual Guaranty at all prior to signing it.

On November 19, 2014, the trial court granted Battery Alliance's motion for summary judgment. The trial court concluded that "the Individual Guaranty which gives rise to the above case is unambiguous and that under the terms of said Guaranty, Defendant Ryan Stout is found to be liable as an individual guarantor of the indebtedness owed to Plaintiff by Defendant, T&L Sales[]." Subsequently, the trial court entered an order on January 16, 2013 approving a final award total of $186,007.53 against Appellant, including attorney's fees. Ryan Stout timely filed this appeal.

## Issue

Appellant Ryan Stout presents one issue for review, as taken from his brief:

Whether the trial court erred in failing to consider extrinsic evidence presented by Ryan Stout at Summary Judgment to explain the parties' intent regarding his signature on the individual guaranty agreement.

## Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore de novo with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010).

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

6

In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

In addition to the summary judgment standard, we note that a "guaranty in a commercial transaction will be construed as strongly against the guarantor 'as the sense will admit.'" *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

## Law

The salient issue in this case concerns the proper interpretation of the Individual Guaranty. When a contract is not ambiguous, its interpretation is a question of law that is appropriate for summary judgment. *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton*, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012) ("Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment.") (citing *Ross Prods. Div. Abbott Labs. v. State*, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2 (Tenn. Ct. App. Dec. 5, 2007), *perm. app. denied* (Tenn. Apr. 28, 2008)). When parties reduce their agreement to writing, the law favors enforcing these agreements as written. *Bob Pearsall Motors*, 521 S.W.2d 578, 580 (Tenn. 1978). Stated another way, the court, when interpreting a contract, "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." *Union Planters Nat'l Bank v. Amer. Home Assur. Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors*, 521 S.W.2d at 580.

Where a contract is unambiguous, the court may not look beyond the four corners of the contract to ascertain the parties' intention. *Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987); *Bokor v. Holder*, 722 S.W.3d 676, 679 (Tenn. Ct. App. 1986). Each provision must be construed in light of the entire agreement, and the language in each provision must be given its natural and ordinary meaning. *Buettner v. Buettner*, 183 S.W.3d 354, 359 (Tenn. Ct. App. 2005).

Here, Appellant argues that the trial court erred in failing to consider parol evidence. It is well settled in Tennessee that where the terms of an agreement are unambiguous, the parol evidence rule bars extraneous evidence used "'to alter, vary, or qualify the plain meaning of an unambiguous written contract.'" *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*,

160 S.W.3d 521, 525 (quoting ***GRW Enters., Inc. v. Davis***, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)). "The parol evidence rule serves to secure the integrity of contracts and to guard against fraud by a party who agrees to the unambiguous terms of a written agreement and then seeks to disavow those terms through extrinsic evidence." ***Textron Fin. Corp. v. Powell***, No. M2001-02588-COA-R3-CV, 2002 WL 31249913, at *3–*4 (Tenn. Ct. App. Oct. 8, 2002) (citing 32A C.J.S. *Evidence* § 1132, § 1159 (1996); *see **Tidwell v. Morgan Bldg. Sys., Inc.***, 840 S.W.2d 373, 376 (Tenn. Ct. App. 1992)). However, where a contract is ambiguous—that is, susceptible to more than one reasonable interpretation—the parties' intent cannot be determined by a literal interpretation of the language. *See **Planters Gin Co. v. Fed. Compress & Warehouse Co.***, 78 S.W.2d 885, 890 (Tenn. 2002). Accordingly, several exceptions to the parol evidence rule exist where a party may present evidence to show fraud, misrepresentation, mistake, and incapacity. *See **Textron Fin. Corp.***, 2002 WL 31249913, at *3–*4; ***Patty v. Peery***, Blount Equity No. 198, 1991 WL 83329, at *3 (Tenn. Ct. App. May 22, 1991). According to this Court in ***Textron Financial Corporation***:

> The [parol evidence] rule [applies to] contracts of guaranty. 32A C.J.S. *Evidence* § 1165 (1996). However, application of the parol evidence rule includes many exceptions. ***Id.*** at § 1194; *see **Huffine v. Riadon***, 541 S.W.2d 414 (Tenn. 1976). [One] such exception to the parol evidence rule is that extrinsic evidence is admissible to show fraud or mistake. *See **id.*** . . . When parol evidence is offered not to vary or disavow the terms of the contract, but to show an alleged fraud or mistake, this Court is hesitant to exclude the evidence. *See **Maxwell v. Land Dev., Inc.***, 485 S.W.2d 869, 877 (Tenn. Ct. App. 1972); ***Rentenbach Eng'g Co. v. General Realty, Ltd.***, 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985); ***Decatur County Bank v. Duck***, 926 S.W.2d 393, 397 (Tenn. Ct. App. 1997). Thus the rule has been considerably relaxed by the courts "in order that fraud may be thwarted, mistakes corrected, accidents relieved against, trusts set up and enforced, and usury exposed and eliminated." *Gibson's Suits in Chancery*, § 189 (William H. Inman ed., 6th ed.1982).

***Textron Fin. Corp.***, 2002 WL 31249913, at *5.

We are also cognizant that guaranty agreements are special contracts under Tennessee law. ***SunTrust Bank v. Dorrough***, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001). As explained by this Court:

A guaranty is a contract and is to be construed according to the ordinary meaning of the language used and with the view to carry out the intent of the parties. *First Nat'l Bank v. Foster*, 451 S.W.2d 434, 436 (Tenn. Ct. App. 1969). . . . Guarantors are disfavored in Tennessee, and we will construe a guaranty against the guarantor as strongly as the language will permit. Id. (citing *Squibb v. Smith*, 948 S.W.2d 752, 755 (Tenn. Ct. App. 1997); *Farmers—Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

*SecurAmerica Business Credit v. Schledwitz*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *9 (Tenn. Ct. App. Aug. 26, 2011); *see also Bright v. McKnight*, 33 Tenn. 158 (1853) ("[A] guarantor shall be held bound to the full extent of what appears to be his engagements . . . .").

Accordingly, with the foregoing in mind, we turn to examine whether the trial court correctly declined to consider parol evidence, or whether an exception to the parol evidence rule applies.[6]

## Ambiguity

To determine whether the court properly granted summary judgment, it is crucial to determine whether the Individual Guaranty is in fact ambiguous and whether the parol evidence rule therefore bars extrinsic evidence to aid in its interpretation. With respect to this issue, the parties' arguments are diametrically opposed.

Appellant's argument is three-fold. First, he asserts that the Individual Guaranty is ambiguous because it is uncertain in which capacity he signed, as a guarantor or otherwise. Second, he argues that, because the Individual Guaranty is ambiguous, the trial court erred

---

[6]Before we proceed to the substance of the relevant parol evidence exception in this case, we point out that the argument section of Appellant's brief appears to raise the exception of fraud. Fraud, however, is an affirmative defense, Tenn. R. Civ. P. 8.03, and it was not raised by Appellant in his answer to the complaint. Accordingly, it is waived, and we do not address it in this Opinion. Tenn. R. Civ. P. 8.03 ("In pleading to a preceding pleading, a party shall set forth affirmative facts in short and plain terms relied upon to constitute . . . fraud[.]"); *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987) ("In his answer to the complaint, [the defendant] failed to raise any affirmative defenses; therefore, he waived them."); *see also The Bradley Factor, Inc. v. Holmes*, 2004 WL 343966, at *2 (declining to address defendant's fraud in the inducement defense to a claim for breach of contract where the defendant failed to raise fraud as an affirmative defense).

Furthermore, in an abundance of caution, we also find that Appellant waived the defense of mistake. Pursuant to Tennessee Rule of Civil Procedure 9.02, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Our review of the record shows that Appellant has not stated with particularity any averments that would constitute mistake.

when it did not consider parol evidence explaining the intentions of the parties when he signed his name. He asserts that Mr. Sutton told William Stout that Appellant's signature could serve as a witnessing signature. Last, Appellant argues that summary judgment was inappropriate because the parol evidence improperly excluded by the trial court creates a genuine dispute of material fact, precluding summary judgment.

In contrast, Battery Alliance's argument is that the Individual Guaranty is not ambiguous and that Appellant is clearly personally bound as an individual guarantor for the debts of T&L Sales. Battery Alliance asserts that the trial court properly precluded consideration of the Appellant's parol evidence because the Individual Guaranty is unambiguous. Thus, according to Battery Alliance, summary judgment was appropriate.

After considering similar arguments by the parties made to the trial court, it concluded that "the Individual Guaranty which gives rise to the above case is unambiguous and that under the terms of said Guaranty, Defendant Ryan Stout is found to be liable as an individual guarantor of the indebtedness owed to [Battery Alliance] by Defendant T&L Sales, Inc." The trial court made no further findings or conclusions. At this juncture, we are only tasked with reviewing the issue presented to this Court concerning whether parol evidence was properly excluded. We offer no opinion concerning the merits of the case or weight of the evidence presented by either party. Accordingly, with the foregoing in mind, we turn to whether the trial court properly concluded that the Individual Guaranty was unambiguous.

We begin our analysis with the plain language of the Individual Guaranty. Appellant does not disagree that the purpose of the agreement was to secure a guarantor in his or her individual capacity. However, he asserts that the way in which he signed the Individual Guaranty creates an ambiguity as to whether he was signing as a guarantor or in some other capacity. As stated above, Appellant signed the Individual Guaranty on a hand drawn line and then handwrote "Secretary" under his signature. William Stout's signature, however, appears on a typed line above the typed designation "Guarantor Signature Required." Furthermore, although only one typed line was designated for a guarantor's signature, the Individual Guaranty agreement consistently utilizes the plural "guarantors," rather than "guarantor." Battery Alliance contends that Appellant's designation of "Secretary" is "superfluous and meaningless," and that the Individual Guaranty clearly identifies Appellant as one of the "undersigned guarantors."

To support its argument, Battery Alliance cites *Campora v. Ford*, 124 S.W.3d 624 (Tenn. Ct. App. 2003), which it interprets as holding that a guaranty is not rendered ambiguous by the maker's designation of his corporate or representative capacity. In *Campora*, the plaintiff, Jeffery L. Campora,[7] sued the defendant, Richard Dale Ford, for the

---

[7] Another plaintiff was involved in this case in a different capacity; however, his involvement is

10

balance due on a non-negotiable promissory note. *Id.* at 625. Mr. Ford was the president and COO of Sircle Software, L.L.C. ("Sircle Software"). As part of his duties, Mr. Ford was tasked with procuring investment capital for the company prior to a proposed stock offering. Mr. Campora agreed to invest, and he and Mr. Ford executed a promissory note in the amount of $50,000.00. The note provided that, "I, Richard Dale Ford, promise to pay to the [payee] . . . the sum of $50,000.00 . . . ." *Id.* at 626. Both Mr. Campora and Mr. Ford signed the promissory note. Additionally, however, Mr. Ford handwrote "President" after his signature block. After Mr. Ford failed to repay the debt, Mr. Campora sued Mr. Ford for breach of the obligations in the promissory note. As in the instant case, Mr. Ford asserted that he could not be found individually liable for the debt because he signed his name in a representative capacity as President of Sircle Software. That trial court granted summary judgment in favor of Mr. Campora. *Id.* at 627.

Mr. Ford appealed. On appeal, this Court affirmed the trial court's decision to grant summary judgment in favor of Mr. Campora. We concluded that the note was unambiguous and, therefore, the trial court did not err in declining to consider parol evidence. Specifically, we opined that "the language contained in the body of the Note clearly obligates Mr. Ford personally." *Id.* at 629. We reiterated that the note mentioned Mr. Ford by name in parts discussing who was responsible for repayment of the note, and that the only mention of Mr. Ford in his representative capacity referenced his ability as COO to convert the principal of the note to an ownership interest in Sircle Software. Accordingly, we concluded that it was unambiguous and clear that Mr. Ford was individually liable for the terms governing repayment of the note.

The *Campora* case is distinguishable from the case-at-bar on a number of grounds. First, the body of the Individual Guaranty here does not implicate Appellant specifically or by name like the note in *Campora* implicated Mr. Ford by name. *See id.* at 626 ("I, Richard Dale Ford, promise to pay . . ."). The only individual specifically implicated or referenced as a "guarantor" in the Individual Guaranty in the case-at-bar is William Stout because his name appears on the signature designated for the guarantor to sign.

Also, in *Campora*, Mr. Ford was the only undersigned party capable of being a guarantor for the note; therefore, the possibility for ambiguity concerning the capacity in which Mr. Ford signed the note was far less than in the instant case. From our reading of the cases cited by Battery Alliance, all involve a single signatory who attempted to evade personal liability on a Guaranty by appending their role in the company after their signature. *The Bradley Factor, Inc. v. Holmes*, No. E2003-01571-COA-R3-CV, 2004 WL 343966 (Tenn. Ct. App. Feb. 24, 2004); *Campora*, 124 S.W.3d 624; *Cone Oil Co. v. Green*, 669 S.W.2d 662 (Tenn. Ct. App. 1983). In those cases, there was no dispute that the individuals

immaterial to this Opinion. Accordingly, to avoid confusion, we only address the claims brought by Mr. Ford.

11

charged had signed the Individual Guaranties with an intent to be bound; the only dispute was whether by signing the individuals bound themselves or only their companies to liability. The same is simply not true in this case. Here, Appellant asserts that the way in which he signed the contract creates an ambiguity as to whether the parties intended that he be bound at all, either personally or through the company. Accordingly, these cases are not as helpful to resolving this situation as they may seem at first perusal.

In the instant case, William Stout signed on the line marked "Guarantor Signature Required," and Appellant signed on a hand drawn line designated "Secretary." There is no dispute in this appeal that William Stout was individually obligated by the Individual Guaranty. The definition of "Secretary," however, is not defined within the four corners of the Individual Guaranty. When a term is not defined within a contract, the court may utilize a dictionary definition of the term to gauge its meaning. *See* **Travelers Indem. Co. of Amer. v. Moore & Assocs., Inc.** 216 S.W.3d 302, 308 (Tenn. 2007); **Martin v. Security Mut. Fin. Corp.**, Davidson Equity, App. No. 87-286-II, 1988 WL 7424 (Tenn. Ct. App. Feb. 3, 1988), *perm. app. denied* (Tenn. Dec. 5, 1988).[8] The dictionary definition of the term "secretary," however, is "a person whose work is keeping records, taking care of correspondence or other writing tasks, etc. . . . ." Webster's New World College Dictionary 1313 (5th ed. 2014). Heightening the uncertainty as to whether the parties intended Appellant to be an individual guarantor, the Individual Guaranty plainly omits any designation of "guarantor" from Ryan Stout's signature line, instead using the word "Secretary." *Cf.* **The Bradley Factor**, 2004 WL 343966, at *3 (concluding that defendant was personally liable as an individual guarantor where defendant was the sole guarantor and the signature line was designated as "guarantor," despite defendant adding "CEO" after his signature). Furthermore, the use of the plural term "guarantors" does not unambiguously render Appellant one of the "guarantors" merely because he also signed the guaranty. Rather, it appears that the use of the plural "guarantors" refers to the multiple typewritten lines designated for guarantors, one for William Stout and his spouse. No individual signed on the signature line for the guarantor's spouse; instead, Appellant chose to create a new line on the document that does not expressly designate the signatory as a guarantor. Accordingly, based on the different designation affixed below the signatures of William Stout and Ryan Stout, we conclude it is reasonable to interpret Ryan Stout's signature as serving a different purpose other than individual guarantor.

---

[8] "Although a contract cannot be varied by oral evidence, the course of previous dealings, the circumstances in which the contract was made, and the situation of the parties are matters properly to be looked to by the court in arriving at the intention of the parties to the contract." **Wilkerson v. Williams**, 667 S.W.2d 72, 76 (Tenn. Ct. App. 1983) (citing **Kroger Co. v. Chem. Sec. Co.**, 526 S.W.2d 468 (Tenn. 1975); **Jeffers v. Hawn**, 186 Tenn. 530, 212 S.W.2d 368 (1948)). To this end, we note that nothing in the record suggests that Appellant had ever served in the capacity of Secretary for T&L Sales.

Our conclusion that an ambiguity exists stems from the inferences that both parties are asking this Court to make. Battery Alliance seeks to have this Court ignore the fact that Appellant's alleged status as a guarantor is never expressly stated in the contract. Indeed, unlike his father's signature line, which clearly designates him as a guarantor, Appellant's signature line merely designates him as a "Secretary" with no express indication that the signature is intended to designate Appellant as an additional guarantor. Essentially, Battery Alliance invites us to infer that the mere fact that Appellant signed the document at all is enough to demonstrate that he intended to be personally bound by it. Similarly, Appellant asks this Court to infer that the word "Secretary" accompanying his signature permits the conclusion that he was only serving as a witness. To this end, both parties have requested that this Court make an inferential leap in their respective favors. The varying interpretations championed by both parties, however, are premised upon inferences that are not explicitly supported by the terms contained within the four corners of the Individual Guaranty. As discussed above, although Tennessee law disfavors guarantors, this Court may only construe a guaranty against the guarantor as strongly as the plain language of the guaranty agreement will permit. *SecurAmerica*, 2011 WL 3808232, at \*9 (citing *SunTrust Bank*, 59 S.W.3d at 156). Accordingly, we must conclude that because either parties' interpretation is reasonable, yet not supported by the explicit language of the individual Guaranty, an ambiguity is present, and parol evidence is necessary to resolve the ambiguity. *See Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) ("If . . . the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language.").

Still, Battery Alliance argues that Appellant's proposed interpretation of the Individual Guaranty would render the agreement a nullity. According to Battery Alliance, permitting Appellant to present evidence that he signed as a witness or in a representative capacity contradicts the premise that the "very nature of a guaranty is the obligation of a guarantor in addition to the obligation to be secured." In its brief, Battery Alliance argues that to interpret the agreement as anything other than an individual guaranty of Appellant would "add no security to the obligation of the corporation whose debt is being guaranteed."

Indeed, Tennessee case law supports the premise that a guaranty obligating only a corporate-debtor (and not some other entity or individual) would not add security to the underlying obligation because the debtor was already liable for the underlying transaction. *See Cone Oil Co. v. Green*, 669 S.W.2d 662 (Tenn. Ct. App. 1983). In *Cone Oil*, this Court found the defendant's argument unpersuasive that he signed a guaranty agreement in his corporate capacity because the guaranty would be rendered superfluous, as the corporation was already liable pursuant to the underlying transaction. *Id.* at 664 ("A guaranty obligating only the corporation would not in any way add security to the obligation of the corporation, because the corporation was already fully obligated as principal."). In contrast, the instant

case's issue of whether Appellant signed as a witness or in his representative capacity has no bearing on whether the Individual Guaranty would then be rendered a nullity. William Stout signed the guaranty at issue, and a default judgment has been entered against him. Thus, William Stout's signature provides the necessary security for the underlying transaction, with or without Appellant's signature. Accordingly, we respectfully find Battery Alliance's argument in this regard unpersuasive.

Taking the contract as a whole, we must conclude that there "is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *NSA DBA Benefit Plan, Inc. v. Conn. Gen. Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997) (citing *Hillis v. Powers*, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993)). Therefore, we conclude that the Individual Guaranty at issue is ambiguous. After reviewing the plain language of the Individual Guaranty, we are unable to determine whether Appellant's signature on an undesignated, hand drawn line would render him individually liable as a guarantor. The application of the rules of contract interpretation do not resolve this ambiguity. Accordingly, due to the ambiguity in the Individual Guaranty, the trial court erred in declining to consider parol evidence presented by Appellant and further erred in granting summary judgment in favor of Battery Alliance. On remand, the trial court shall consider parol evidence and determine whether it presents a genuine dispute of material fact making summary judgment inappropriate. *See Stonebridge Life Ins. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at *9, *12 (Tenn. Ct. App. Nov. 21, 2012) (remanding the case to the trial court after holding that the contract at issue was ambiguous, rendering summary judgment inappropriate).

## Conclusion

The judgment of the Shelby County Circuit Court is vacated and this cause remanded to the trial court for further proceedings. Costs of this appeal are taxed to Appellee, Battery Alliance, Inc., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

14