IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2010 Session

## ASSOCIATED SHOPPING CENTER PROPERTIES, LTD. v. EDWARD H. HODGE ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 2009-CV-41      C. L. Rogers, Judge**

---

**No. M2010-00039-COA-R3-CV- Filed March 22, 2011**

---

The issue in this commercial real estate lease dispute is whether the individual defendants are additional lessees and, thus, personally liable under the lease. Plaintiff, the lessor of retail space, filed this action against the three defendants when the limited liability company, Décor Fabrics, LLC, a lessee, breached the lease by failing to pay rent for the term of the lease. The individual defendants denied liability, asserting that Décor Fabrics, LLC, was the only lessee. The trial court found that the lease unambiguously identifies each of the individual defendants as additional lessees and assessed damages against them for breach of the lease, including the plaintiff's attorneys fees. Only one of the defendants appealed. He asserts that the trial court erred by finding the lease unambiguous as to the identify of the lessee(s) and by failing to consider the parties' conduct to conclude that Décor Fabrics, LLC, was the only lessee. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Marshall T. Cook, Hendersonville, Tennessee, for the appellant, Edward H. Hodge.

James L. Smith, Hendersonville, Tennessee, for the appellee, Associated Shopping Center Properties, Ltd.

### OPINION

The plaintiff-lessor, Associated Shopping Center Properties, LTD ("Associated"), owns and manages commercial property on Main Street in Hendersonville, Tennessee. On December 9, 2004, Associated entered into a lease agreement ("the Lease") for the use of the

space with Décor Fabrics, LLC, a home decorating business operating under the name "Material Things." Décor Fabrics was a limited liability company owned by the three individual defendants in this action, Tracy Hanchey, Jacqueline Westra and Edward Hodge.[1]

The Lease consists of two distinct parts: a five-page preprinted form agreement on legal size paper and a two-page Addendum, which is typed on letter size paper. The preprinted form – which we refer to as "the main body of the Lease" – contains several blank lines where additional information is to be written by hand, such as the identity of the lessee(s), the demised premises, the lease term, etc. The second part of the Lease is the two-page addendum; it is titled "Attachment A." None of Attachment A is preprinted; it is typed.

The only "Lessee" expressly identified in the main body of the Lease is "Décor Fabrics, LLC," which was handwritten; however, "See Attachment A" is also handwritten immediately adjacent to Décor Fabrics, LLC. The handwritten statement "See Attachment A" also appears in two additional paragraphs. Paragraph 1.0 titled "Lease Term" and paragraph 2.0 titled "Minimum Rental and Cost of Living Adjustment," are crossed through, and the notation "See Attachment A" is written over the crossed-through paragraphs. An unnumbered paragraph on the first page states that "[a]ny attachment to this Lease Agreement shall be a part of this agreement."

The signatures of Mr. Hodge and Ms. Hanchey, followed by their birthdays and social security numbers, appear at the bottom of the last page of the main body of the Lease on the signature line provided for the Lessee. There is no indication that either signature was made in a representative capacity. Ms. Westra's signature appears on a separate page, which states, "I have read and agree to the terms as stated in the Lease Agreement between Lessor: Associated Shopping Center Properties, Ltd. And Lessee: Décor Fabrics, LLC," and is followed by her signature and social security number.

The first paragraph of Attachment A states:

1.      Lessee shall be Décor Fabrics, LLC, with the following members also as individual Lessees:

---

[1]Ms. Hanchey approached Ms. Westra and Mr. Hodge to become involved in Décor Fabrics after a previous owner exited the business. They agreed to join Ms. Hanchey because, at the time, the three were close friends; Ms. Westra is also Ms. Hanchey's sister. Ms. Hanchey was the President of Décor Fabrics and was solely responsible for its daily operation. Ms. Westra served as the Vice-President and Mr. Hodge as the Chief Financial Officer. Despite the fact that Mr. Hodge had considerable business experience, currently working as a corporate controller, certified managing accountant and treasurer for a manufacturing company, and having previously worked as a corporate controller for two additional companies over the past decade, he and Ms. Westra had little involvement with the business.

A. Tracy Hanchey, member and President
B. Jacqueline Westra, member and Vice President
C. Edward Hodge, member and CFO

Attachment A also states that the Lease is for a five-year term, and that the annual rent (payable in twelve monthly installments) would be calculated at a rate of $7.40 per square foot, with an additional $1.00 per square foot for taxes, insurance, and maintenance for the common areas.[2] It also identifies the improvements and renovations Associated agreed to complete before Décor Fabrics moved into the space.

The start date of the lease term was delayed by several months because the renovations to the property took longer than expected to complete. Therefore, on January 9, 2006, Greg Smith, the Management Agent for Associated, mailed a letter to Ms. Hanchey's attention at the address for Décor Fabrics, which stated that the parties should change the start date as listed in the lease from August 1, 2005 to January 1, 2006, to reflect when Décor Fabrics actually moved into the space. This letter also stated that $4,840.80 would be the monthly rent,[3] which was based on the final measurement of the space at 7,850 square feet and the previously agreed upon rate of $7.40 per square foot per year. Only Mr. Smith's signature appears on the January 6, 2006 letter. However, Mr. Smith and Ms. Hanchey executed "Lease Amendment #2" on October 4, 2007, which provided that "the letter dated January 9, 2006 shall be considered Lease Amendment #1." Lease Amendment #2 also reiterated that January 1, 2006 was the official start date of the term of the lease and further stated that "all other terms and conditions [in the original Lease] remain the same." At the top of Lease Amendment #2, Associated is listed as the lessor, and "Material Things" is listed as the lessee.

Pursuant to the Lease Amendments, the term of the lease commenced on January 1, 2006. Décor Fabrics began experiencing financial problems three months into the term of the lease; thereafter, it frequently failed to make the monthly rent payments when due. On November 20, 2008, Associated mailed a notice of default to Ms. Hanchey, Ms. Westra, and Mr. Hodge, stating that they had accrued a total of $44,016.58 in unpaid rent. Associated sent a second notice of default on January 9, 2009, and a third on March 26, 2009. In the third notice, Associated stated that it had leased the space to a new tenant. The third notice also

---

[2]The space was being renovated when the lease was executed, and the parties could not determine the square footage until the renovations were complete.

[3]The amount of the monthly rent had not been stated previously because the actual square footage of the rental space could not be determined until the renovations were completed.

provided that Ms. Hanchey, Ms. Westra, and Mr. Hodge would be individually responsible for $4,666.67 in expenses Associated incurred in locating a new tenant and preparing the space to be re-leased as well as the unpaid rent and a $500/month deficiency for the remainder of the five-year lease term.

In the interim, on January 15, 2009, Associated also filed this action against Ms. Hanchey, Ms. Westra, and Mr. Hodge in their individual capacities, alleging they were additional lessees and thus personally liable under the Lease. Ms. Hanchey never filed an answer, and a default judgment in the amount of $44,015.58 plus $14,672.10 in attorney's fees was entered against her on July 23, 2009. Ms. Westra and Mr. Hodge each filed answers, asserting as their only defense that they were not personally liable for the breach of the Lease. They argued that Décor Fabrics was the sole lessee and that they had signed the lease in their representative capacity as officers of the company.

A bench trial was held November 2, 2009. The trial court found that the relevant provisions were unambiguous in naming Mr. Hodge and Ms. Westra as additional, individual lessees and, therefore, they were personally liable for breach of the Lease. The trial court awarded Associated damages against Ms. Westra and Mr. Hodge in the amount of $73,261.54 for unpaid rent and expenses to re-lease the property, and $9,000.00 in attorney's fees as provided in the Lease.

The defendants filed a timely notice of appeal, however, Ms. Westra has settled with Associated. Thus, Mr. Hodge is the sole remaining appellant.

Mr. Hodge does not dispute the fact that the Lease was breached due to the failure to pay rent, nor does he dispute the amount of damages Associated is entitled to recover. However, he insists that he is not an individual lessee. He argues that the parties never intended him to be an individual lessee, and that his only involvement with the lease was as a member and officer of Décor Fabrics, which was the only intended lessee. Therefore, our analysis will be limited to whether Mr. Hodge is an additional lessee under the Lease.

## STANDARD OF REVIEW

The interpretation and application of an unambiguous contract is a question of law, the determination of which enjoys no presumption of correctness on de novo appellate review. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Guiliano v. Cleo, Inc.* 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contract is not entitled to a presumption of correctness under Tenn. R. App. P. 13(d) on appeal. *Angus v. W. Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). Accordingly, we will review the contractual issues de novo and reach our own

independent conclusions regarding their meaning and legal import. *Guiliano*, 995 S.W.2d at 95; *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

## ANALYSIS

Mr. Hodge contends the trial court erred in finding that he is an additional lessee. Specifically, he argues that the identity of the intended lessee(s) is ambiguous when the main body of the Lease is read in conjunction with Attachment A and the two amendments to the lease; furthermore, he argues that because the identity of the intended lessee is ambiguous under the terms of the contract, the trial court erred in failing to consider the course of conduct between the parties when determining that he was individually liable on the Lease. It is his assertion that an examination of the parties' conduct would have revealed that he was never intended to be an individual lessee, and that he was merely acting in a representative capacity on behalf of Décor Fabrics. In support of this argument, he states that Associated never investigated his financial worth, that he was never consulted on either of the "Lease Amendments," and, that despite the fact that the rent arrearage began to accrue as early as March 2006, he was never contacted nor sent an invoice until the first Notice of Default in November 2008.

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles." *Rainey v. Stansell*, 836 S.W.2d 117, 118-19 (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975)). A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. *Mckay v. Louisville & N. R. Co.*, 182 S.W. 874, 875 (Tenn. 1916). When resolving disputes concerning contract interpretation, we are to ascertain the intention of the parties based upon the "usual, natural, and ordinary meaning" of the contractual language. *Rainey*, 836 S.W.2d at 119. Furthermore, "[a]ll provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano*, 995 S.W.2d at 95 (citing *Rainey*, 836 S.W.2d at 118-19).

If the court determines the language in a written contract is unambiguous, then "the court must interpret the contract as written, rather than according to the unexpressed intention of one of the parties." *Campora v. Ford*, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003) (citing *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). A contract is ambiguous "only when it is of uncertain meaning and may fairly be understood in more ways than one." *Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190-91 (Tenn. 2003). The court will not apply a strained construction of the language to create an ambiguity where one does not exist. *Id.*

Mr. Hodge argues that there are differences between the main body of the lease and Attachment A that create an ambiguity as to the number and identity of intended lessee(s). To support his claim, he points to the fact that the main body of the lease uses "lessee" in its singular form, and expressly identifies only "Décor Fabrics, LLC" as a lessee; whereas Attachment A uses the plural, "lessees," and lists Ms. Hanchey, Ms. Westra, and Mr. Hodge "also as individual Lessees."[4] We are not persuaded by this argument.

As noted earlier, where possible, the provisions of a contract should be read in harmony with each other, "to avoid repugnancy between the several provisions of a single contract." *Rainey*, 836 S.W.2d at 118-19. In this case, the mere use of the singular form of "lessee" in the main body of the Lease, which is a preprinted form, without language expressly excluding the possibility of additional lessees, is not sufficient to create a conflict with the express identification of additional lessees in Attachment A. This is particularly true in this case as the paragraph where the Lessee is to be identified instructs the parties to "See Attachment A," which expressly states there are additional lessees who are identified by name.

The first unnumbered paragraph of the Lease identifies "Associated Shopping Center Properties, LTD." as the Lessor and states the address and suite number of the rental property. The next paragraphs provide blank lines to identify the "Lessee," the lease term and rent. As written in by the parties, these three sections read as follows:

**Lessee**:   *Decor Fabrics LLC  \*  See Attachment A*   (handwritten)
    dba            *Material Things*         (handwritten)

### 1.0 LEASE TERM:

This Lease shall be for a period of  *-- See Attachment A --* (handwritten) . . .
(The remainder of paragraph 1.0 is stricken through.)

### 2.0 MINIMUM RENTAL AND COST OF LIVING ADJUSTMENT:

The Lessee shall pay to the Lessor the sum of $ *-- See Attachment A --* (handwritten) . . .
(The remainder of paragraph 2.0 is stricken through.)

---

[4]Mr. Hodge also argues that Attachment A should not be considered part of the Lease. We find this argument without merit. The main body of the lease states that "Any Attachments to this Lease Agreement shall be a part of this agreement." Furthermore, the notation to "See Attachment A" appears conspicuously in several different places in the main body of the Lease, which Mr. Hodge signed.

The next paragraph, which is unnumbered, is titled "**ATTACHMENTS** " and reads:

> Any attachment to this Lease Agreement shall be a part of this agreement, and will incorporate all agreements relative to Lease option periods, cost of living adjustments, percentage rent, etc., as agreed between Lessor and Lessee at the time of signing of the agreement.

On the last page of the pre-printed form Lease, Associated is identified as the Lessor. The signature of Gregory Smith appears on the blank signature line provided for the Lessor, and immediately below his signature appears the notation: "C. Gregory Smith, Jr. Management Agent." Below this appears the section for the Lessee to execute the Lease, where the word "LESSEE" is immediately followed by a blank signature line for the Lessee. Mr. Hodge's signature and Ms. Hanchey's signature appear above the blank signature line provided for the Lessee. Their signatures are followed by the date and their respective social security numbers. This appears on the Lease as follows:

|  | *Edward H. Hodge* | *12/9/04* | *SSN*[5] | (handwritten) |
|---|---|---|---|---|
| **LESSEE**: | *Tracy Hanchey* | *12/9/04* | *SSN* | (handwritten) |

Unlike Mr. Smith who signed as Management Agent of Associated, neither Mr. Hodge nor Ms. Hanchey made any notation that they signed the lease in a representative capacity.

Mr. Hodge claims he does not remember seeing Attachment A. The trial court did not afford this statement much credit and neither do we. The main body of the Lease, which Mr. Hodge signed, expressly directs the parties to "See Attachment A." This express directive appears very conspicuously three times on the first page of the Lease. Moreover, it affects three very significant provisions, including the identity of the Lessee, the term of the Lease, and the rent. To ascertain these material provisions, Mr. Hodge had to read Attachment A; otherwise, he had no way of knowing these very significant provisions.[4] The first line of Attachment A reads: "Lessee shall be Décor Fabrics, LLC, with the following members *also as individual lessees*: . . . *Edward Hodge*, member and CFO." (Emphasis added). The trial court found that Attachment A "was as clear as it can be" in specifically identifying Mr. Hodge as an additional, individual lessee. We are in full agreement with this finding.

---

[5]The social security numbers are not listed in this opinion for privacy reasons.

[4]It is relevant that Mr. Hodge is the corporate controller, certified managing accountant and treasurer for a manufacturing company and previously served as controller for two other companies. We find it is most difficult to believe that a person of his experience would not want, indeed demand, to know the essential information about the Lease that could only be learned by reading Attachment A.

Mr. Hodge also insists that he was merely acting in a representative capacity on behalf of Décor Fabrics, LLC. Whether a person signing a contract "intended to do so as an individual or as the representative of another should, where possible, be determined from the contract's language." *Bill Walker & Assocs. v. Parrish*, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989) (citing *Lazarov v. Klyce*, 255 S.W.2d 11, 14 (Tenn. 1953)). The contract clearly states that Mr. Hodge is "also" an "individual lessee," and his signature on the main body of the Lease is followed by his personal social security number. An individual's signature, "without limiting or descriptive words before or after it, is the universal method of signing a contract to assume a personal obligation." *Lazarov*, 255 S.W.2d at 12; *compare Bill Walker & Assocs.*, 770 S.W. 2d at 770 ("A corporate officer's signature, preceded by the corporation's name and followed by words denoting the officer's representative capacity, binds only the corporation.").

If Mr. Hodge was merely acting as a representative of Décor Fabrics, LLC, he would not "also" be identified as an "individual lessee," as expressly stated in the Lease. We would have to ignore these unambiguous terms to conclude otherwise.

Mr. Hodge also asserts that our holding in *McNaughten v. Lunan*, No. M2008-00806-COA-R3-CV, 2010 WL 1956996 (Tenn. Ct. App. May 14, 2010) supports his position in this case. It does not, because *McNaughten* is readily distinguishable from the facts of this case. This is because the very unique facts of that case made it impossible for the court to identify the parties to the contract. *Id.* at *2. The business entity identified in the lease agreement as the "lessor" was "128 Volunteer Properties," however, no such entity existed when the lease was executed. Furthermore, Mr. Lunan, the individual defendant, signed the lease agreement as a representative of "Bad Toys, Inc. - Gambler, Inc."[5] At the time Mr. Lunan signed the lease agreement, Bad Toys, Inc. intended to purchase Gambler, Inc., however, no such acquisition had occurred and neither Mr. Lunan nor Bad Toys, Inc., had independent authority to sign the agreement on behalf of the named lessee, Gambler, Inc. *Id.* at *5. The

---

[5]The defendant in the *McNaughton* case, Larry Lunan, was the majority owner of several motorcycle companies, including Bad Toys, Inc., and he wanted to acquire other businesses, including Gambler Inc., so he began negotiations to buy the assets of Gambler's, including the real estate, the equipment and tools, and the right to use the Gambler name. *McNaughten*, 2010 WL 1956996 at *1. Lunan was unable to secure financing for the entire purchase, so the owner of Gambler's, C.K. Spurlock, entered into a contract to sell the real estate to Joyce Lamberson-McNaughten and Alan Wilson; meanwhile, Lunan continued negotiations with Spurlock for the rest of Gambler's assets. *Id.* According to Lunan, Spurlock advised him that Bad Toys would benefit by keeping the business in its current location but if he did not execute a lease, the real property would be leased to a third party, forcing Bad Toys to relocate. *Id.* At trial, the plaintiff, McNaughten, testified that the real estate buyers needed a signed lease to obtain financing to complete the purchase, and Lunan agreed to execute a lease after receiving assurances from Spurlock and McNaughten that the lease would be considered void if Bad Toys could not buy Gambler. *Id.*

case at bar presents a very different set of facts and issues. For these reasons, we find Mr. Hodge's reliance on *McNaughten* misplaced.

Based on the foregoing analysis, we find, as the trial court did, that the Lease, when considered as a whole, expressly and unambiguously identifies Mr. Hodge as an additional lessee, bound in his individual capacity. Having determined that the language used by the parties is "'plain, complete, and unambiguous,'" it would be inappropriate for this Court to delve into "the actual mental processes of the parties in entering into [the Lease]," as "the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.'" *Empress*, 503 S.W.2d at 190 (quoting 17 Am. Jur. 2d Contracts § 245 (1964)).

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Edward H. Hodge.

_____
FRANK G. CLEMENT, JR., JUDGE