

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2017 Session

**EAGLE CDI, INC., ET AL. v. MICHAEL J. ORR, ET AL.**

**Appeal from the Chancery Court for Monroe County**
**No. 18-704    J. Michael Sharp, Judge**

_____

**No. E2016-01399-COA-R3-CV**

_____

This appeal involves a contract dispute between a general contracting company and a husband and wife who sought the company's assistance to build a log cabin home. After the husband and wife defaulted on the original construction contract, the husband and wife and the company signed a second contract, a promissory note, for the remaining balance. The husband and wife subsequently defaulted on the promissory note. The trial court held that the husband and wife breached the second contract, the terms were clear and unambiguous, and a potential ambiguity in the first contract regarding a non-refundable deposit and/or retainer was legally irrelevant in determining the amount owed under the second contract. Because the second contract was clear and unambiguous, we hold that the total sum owed by the husband and wife is proper despite any ambiguity in the first contract. Further, we hold that the trial court properly denied the husband and wife's motion to amend their answer because of undue delay. Accordingly, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, P.J., M.S., joined.

D. Mitchell Bryant, Athens, Tennessee, for the appellants, Michael J Orr and Mary E Orr.

Gary M. Prince and N. Craig Strand, Knoxville, Tennessee, for the appellees, Eagle CDI, Inc. and Dan Mitchell.

## OPINION

## I. BACKGROUND

This appeal arises from a contract dispute between Eagle CDI, Inc. ("Eagle"), its president Dan Mitchell ("Mitchell") and Mr. Michael Orr and Mrs. Mary Orr (collectively "the Orrs" and individually "Mr. Orr" and "Mrs. Orr"). The Orrs were seeking to build a log cabin house in Monroe County, Tennessee. The Orrs purchased a log cabin kit and then contacted Eagle, a general contractor, with the purpose of contracting for Eagle to aid in the construction process. The Orrs and Eagle entered into the Construction Contract on February 1, 2013.

The pertinent aspects of the Construction Contract described the costs to be paid to Eagle as follows:

> **CONTRACTOR** shall be compensated for services herein on a modified cost plus basis. Cost shall be defined as follows:
>
> (a) The materials and equipment reasonably and necessarily incurred in the construction herein.
> (b) Permits
> (c) Actual cost of on-site utilities, insurance
> (d) Actual costs of sub-contract items
> (e) The **CONTRACTOR** shall receive an Administrative Expense to be calculated at a rate of 15.5% of the costs stated above.
>
> In addition to the costs described above, the **CONTRACTOR** shall receive additional compensation to be calculated as 10% of the costs stated above.
>
> * * *
>
> **All sums shall be paid as follow:** A **Non-Refundable Deposit** in the amount of **$45,000** based upon the estimated scope of work requested to perform for construction of **$498,430.62**, with draws based upon work completion and this contract.

The record is undisputed that on February 4, 2013, the Orrs paid Eagle the $45,000 sum contracted for in the second clause quoted above. Eagle submitted Invoice #730 to the Orrs concerning the $45,000 payment. The invoice reflected the full payment of $45,000

by the Orrs. The Description column on the invoice stated "ECDI DEPOSIT INVOICE NON-REFUNDABLE CUSTOMER DEPOSIT/RETAINER" and the Item column stated "DEPOSIT/RETAIN…."

Mr. Orr has significant construction experience, numerous Ph.Ds., and he has worked around the world in various capacities, including at Caterpillar. Mr. Orr and Eagle President Dan Mitchell arranged that Mr. Orr would oversee management of the project, and, as such, the 15.5% administrative fee mentioned in the contract would be waived. Mr. Orr directly paid subcontractors and directly purchased materials during this time. He did so through the use of a construction loan of approximately $343,200. However, Eagle later charged the Orrs the administrative fee beginning with the November 6, 2013 invoice. Eagle contends Mr. Orr ceased managing the project sufficiently, thus resulting in Eagle managing the project from that point forward.

The Orrs continued to pay Eagle as billed as reflected by Eagle's invoices from February 2013 until November 2013. The Orrs failed to pay the amount reflected on Invoice #755, dated November 6, 2013, for the amount of $31,382.81. They further failed to pay a second billed amount reflected on Invoice #762 for $91,187.01 and dated February 27, 2014. Eagle continued to work on the project after the Orrs' first failure to pay after Mr. Orr assured Mitchell in November 2013 that funds from an inheritance were forthcoming.

The Orrs and Mitchell met at an undetermined date in January 2014. Mr. Orr testified that he did not remember the details of the conversation. Mitchell testified that they discussed the completion of the project and the need for the construction financing to be completed and Eagle's lien rights released so the Orrs could seek permanent financing for the house. Both parties agree a Promissory Note was mentioned as a way for the Construction Contract to be completed, allowing for permanent financing from a bank for the Orrs. The Orrs received the certificate of occupancy on January 24, 2014, and they had moved into the residence by that time.

The closing to finalize permanent financing on the house occurred on February 28, 2014. Although the record is not clear as to exactly when or how the February 27, 2014 invoice was received by the Orrs, it is undisputed that it occurred within a day of the closing meeting between the Orrs and a title agent of the bank. Mr. Orr testified they received the invoice concurrently with the Promissory Note at the meeting on February 28, 2014, whereas Mitchell testified that the invoice would have been emailed to the title agent and forwarded to the Orrs.

Mr. Orr testified that neither he nor his wife had seen the February 27, 2014 invoice for $91,000 or the Promissory Note until the night of the closing. Mitchell was not present, but a title agent representing Eagle was present at the closing. According to Mr. Orr, due to issues with the initial construction loan appraisal and the later, lower

permanent financing appraisal, he and his wife would incur severe financial penalties in the sum of $45,000 per month if the Orrs did not satisfy the Construction Contract and obtain permanent financing by February 28, 2014, the night of the closing.

The Promissory Note's pertinent sections are as follows:

> FOR VALUE RECEIVED, the undersigned customer(s) makes promise to pay to the order of EAGLE, CDI, Inc. and/or Dan W. Mitchell . . . the principal sum of **One Hundred Twenty-Two Thousand, Five Hundred Sixty Nine and 82/100 Dollars ($122,569.82)** . . . from the date of this **Promissory Note**, until paid in full . . . .
>
> **Repayment Terms:** This **Promissory Note** is payable in **One installment payment** of $122,569.82, which is due and payable **30 days** from the date that this **Promissory Note** is signed by all the obligors, and the Note Holder.

The Promissory Note also included a 10% interest for the initial 30 days plus a fixed rate at 10% per annum for the time period that the debt was unpaid. It also included a 5% late fee. The Promissory Note makes no mention or reference to the Construction Contract or the $45,000 initial payment by the Orrs.

Mr. Orr testified that he argued over the amount on the Promissory Note, raising the issue of the initial $45,000 payment. He noted that he called Mitchell after reviewing the note and was told by Mitchell that he must sign the note to continue permanent financing. Mitchell testified that the phone conversation only consisted of Mr. Orr asking what would happen if he failed to pay in the thirty 30-day time frame. Mr. Orr further testified that the title agent said the Orrs must sign the note before any mortgage paperwork could be completed. Regardless, it is undisputed that the Orrs signed the Promissory Note on February 28, 2014. The Orrs failed to pay the amount specified in the Promissory Note within 30 days, except for a single payment of $11,594.21. Eagle sent a demand notice to the Orrs on July 21, 2014 notifying them of their default under the Promissory Note.

Eagle filed a lawsuit for breach of the Promissory Note against the Orrs on October 6, 2014. Eagle's complaint did not make any mention of the original Construction Contract. The complaint sought the principal amount plus interest and other late fees as appropriate under the Promissory Note.

The Orrs filed a *pro se* answer on November 17, 2014, admitting both to signing the Promissory Note and to defaulting on it by failing to pay the requisite amount as required by the Note. The Orrs disputed the total of $122,569.82, asserting that they

made a payment of $11,594.21, which they contended should be credited against the $122,569.82. The answer made no mention of the $45,000 payment under the Construction Contract.

While originally set for trial in December 2014, the case was postponed after the Orrs filed a bankruptcy petition on December 10, 2014 in the United States Bankruptcy Court in the Eastern District of Tennessee. After the Orrs' bankruptcy petition was dismissed in August 2015, the present case resumed.

Eagle filed a Motion for Judgment on the Pleadings on September 21, 2015. Eagle argued judgment should be granted to it based on the Orrs admission of signing the Promissory Note and of defaulting on the Note for the remaining debt, interest and penalties minus the $11,594.21 paid by the Orrs. After a hearing on October 14, 2015, the trial court orally denied Eagle's motion but did not issue an order.

The Orrs filed a Motion to Amend their answer on April 19, 2016, a week and a half before the trial date and several months after obtaining an attorney, asserting affirmative defenses of duress and fraud. In its response, Eagle argued the motion should be denied because of undue delay, lack of notice, bad faith by the Orrs, undue prejudice, and futility.

On May 2, 2016, the scheduled trial date, the court first conducted a hearing to determine whether the Motion to Amend should be granted or denied. The court denied the Orr's motion, finding that it was "not well taken" owing to the fact that it was submitted two weeks before the third setting for trial, despite the case having been pending for more than a year and a half. After hearing testimony from both Mr. Orr and Mitchell and the arguments of counsel, on May 5, 2016, the court ruled in favor of Eagle.

The trial court found two contracts executed by the parties, the initial Construction Contract and the later Promissory Note. The court took notice of the apparent ambiguities in regard to the Construction Contract's clause concerning the $45,000 payment (which was essentially 10% of the total project) and the other clause mentioning the 10% additional compensation Eagle was to receive. However, the court also opined about other clauses whereby both parties certify familiarity with all terms and agree to be bound by all terms of the contract.

Next, the court concluded as a matter of law that the Orrs knowingly signed the Promissory Note and then defaulted and breached the note and that the Promissory Note is enforceable against the Orrs. The court found that while the original Construction Contract was poorly written, the Promissory Note was clear, unambiguous, and dispositive. The Orrs having signed the note were bound by "plain on their face" terms, despite the vague language in the prior Construction Contract.

Further, the trial court found as an admitted fact that the Orrs and Eagle had discussed the Promissory Note before signing it and that the Orrs were completely aware of what they were doing. Additionally, the court determined the Promissory Note amount to be exactly the sum of invoices #755 ($31,382.81) and #762 ($91,187.01) which went unpaid by the Orrs until the signing of the promissory note.

The court further found, despite it not being permitted to be raised as an affirmative defense in the Orrs' answer, no duress or coercion on the part of Eagle. The court conceded that the Orrs may have been under some form of personal duress owing to the situation, although it was not dispositive and not the fault of Eagle.

After the parties drafted an order determining the total amount owed by the Orrs, the court ordered the Orrs to pay Eagle the sum of $161,500.55, which included accrued interest, penalties, and attorneys' fees. The Orrs filed this timely appeal.

## II. ISSUES

We have consolidated the issues on appeal as follows:

1. Whether the trial court properly held that the $45,000 payment made by the Orrs under the prior February 1, 2013 construction contract should not be credited toward the February 28, 2014 Promissory Note upon which this lawsuit originated and upon which the Orrs have only paid $11,549.21.

2. Whether the trial court correctly denied the Orrs' Motion to Amend their answer regarding new affirmative defenses, including duress and fraud.

## III. STANDARD OF REVIEW

A court's findings of fact are reviewed de novo with a presumption of correctness, unless the evidence preponderates against it. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law de novo with no presumption of correctness. *Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005) (citing *Southern Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001)).

A trial court's decision to deny a motion to amend pleadings may only be overturned upon a showing of an abuse of discretion. *Smith v. King's Daughters and Sons Home*, No. W2015–00435–COA–R3–CV, 2015 WL 8730834, at *5 (Tenn. Ct. App.

Dec. 11, 2015) (citing *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013)). A trial court abuses its discretion by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

## IV. DISCUSSION

First, we approach the issue of whether the trial court erred by failing to credit the $45,000 initial payment by the Orrs under the February 2013 Construction Contract toward the sum owed in the February 2014 Promissory Note. We hold that the trial court correctly omitted the $45,000 payment.

In a dispute over the interpretation of a contract, "our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language." *Kafozi*, 184 S.W.3d at 698 (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)). Determining the intent of the parties is a question of law "because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left" to be decided by the court. *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). It is a "central tenet of contract construction" that the intent of the parties at the time of contract execution is dispositive. *Planters Gin Co.*, 78 S.W.3d at 890. That intent is "presumed to be that specifically expressed in the body of the contract." *Kafozi*, 184 S.W.3d at 698. "[T]he object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 17 Am. Jur. 2d, *Contracts*, § 245).

Our initial task is determining if the terms or language of the contract are ambiguous. *Kafozi*, 184 S.W.3d at 698 (citing *Planters Gin Co.*, 78 S.W.3d at 890). If the terms and plain language of a contract are "clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." *Planters Gin Co.*, 78 S.W.3d at 890. "Where a contract is unambiguous, the court may not look beyond its four corners to ascertain the parties' intention." *Williams v. Larry Stoves and Lincoln Mercury, Inc.*, No. M2014-00004-COA-R3-CV, 2014 WL 5308634, at *4 (Tenn. Ct. App. Oct. 15, 2014) (citing *Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987); *Bokor v. Holder*, 722 S.W.2d 676, 679 (Tenn. Ct. App. 1986)). A contract is ambiguous if it or a provision therein is "susceptible to more than one reasonable interpretation," *Planters Gin Co.*, 78 S.W.3d at 890, or if its "meaning is uncertain and may *fairly* be understood in more than one way." *Kafozi*, 184 S.W.3d at 698–99 (citing *Planters Gin Co.*, 78 S.W.3d at 890).

If a contract is found to be ambiguous, we apply our established rules of construction to ascertain the intention of the parties. *Planters Gin Co.*, 78 S.W.3d at 890. The legal meaning of the contract only becomes a question of fact if "ambiguity remains after applying the pertinent rules of construction." *Id.*

First, we examine whether the Promissory Note the trial court determined was breached by the Orrs is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. Upon examining the "usual, natural, and ordinary meaning of the contract language," we hold that the Promissory Note's terms are clear and unambiguous. *Kafozi*, 184 S.W.3d at 698 (citing *Planters Gin Co.* 78 S.W.3d at 889-90).

The Promissory Note's terms clearly provide that the Orrs will pay Eagle the principal sum of $122,569.82 in one installment. The payment was to be made within thirty (30) days of signing the agreement. The Promissory Note also provided for 10% monthly interest and a 5% fee for payments made beyond fifteen (15) days of the date on which payment is due. The Promissory Note clearly spells out what constitutes a default under the contract, including failing to pay an installment of interest or the payment of the principal.

The Promissory Note makes no mention of the prior Construction Contract. It makes no mention of the $45,000 initial payment made by the Orrs to Eagle. The Promissory Note does not include any reference to or incorporation of any prior agreements. The language is not capable of reasonably being interpreted more than one way.

Because we find the Promissory Note unambiguous, we proceed to interpret the contract based on its "usual, natural, and ordinary meaning . . . ." *Kafozi*, 184 S.W.3d at 698 (citing *Planters Gin Co.*, 78 S.W.3d at 889-90). Under the literal terms of the Promissory Note, we hold that the trial court properly interpreted the Promissory Note by holding that the Orrs breached the Note and the $45,000 payment from the Construction Contract should not have been credited toward the Promissory Note's principal sum.

The Promissory Note's literal and plain terms required the Orrs to pay the principal sum to Eagle within one month's time or otherwise suffer additional interest and late fees. Except for a small payment of $11,594.21, the Orrs clearly defaulted on the Promissory Note by failing to pay the principal of $122,569.82 by the end of March 2014 as required by the contract.

Additionally, the $122,569.82 amount owed under the Promissory Note was the exact combined sum of the two invoices billed by Eagle to the Orrs on November 6, 2013 and February 27, 2014, respectively. Eagle submitted a notice of default and demand for payment to the Orrs on July 21, 2014, in accordance with the terms of the note and more

- 8 -

than three months after the Promissory Note was supposed to be paid. The Orrs continued in default until initiation of the original lawsuit. The Orr's pro se Answer and Mr. Orr and Mitchell's undisputed testimony at trial clearly establishes this set of facts. Under the "usual, natural, and ordinary meaning" of the terms of the Promissory Note, the Orrs clearly and knowingly breached the contract and are responsible for the principal amount plus any late fees or penalties lawfully assessed under the agreement. *Kafozi*, 184 S.W.3d at 698 (citing *Planters Gin Co.*, 78 S.W.3d at 889–90).

The Orrs contend that the initial $45,000 payment under the Construction Contract should be credited toward the Promissory Note. The testimony at trial conflicts as to whether the parties understood the $45,000 payment to be a non-refundable deposit or a retainer. The Orrs assert that there was confusion and a lack of understanding as to whether each of the parties understood the nature of the initial payment. The Orrs further assert that the terms of the Construction Contract and the subsequent Invoice #730 for the $45,000 payment are ambiguous. As such, the Orrs contend that such ambiguities in the Construction Contract and subsequent invoice should be construed against Eagle, the drafter. We disagree.

First, we find the trial court's factual findings sound and the record below instructive. The trial court found the Orrs were sophisticated, especially Mr. Orr, who possessed multiple doctorates and obtained vast experience in the construction industry. Further, the Orrs were given both invoices before signing the Promissory Note. We do not look kindly upon the fact that Eagle allegedly provided the Orrs the second Invoice either within a day of or the night of signing the Promissory Note. However, the trial record is undisputed that the Orrs and Eagle discussed a Promissory Note at some time in January 2014 as a way to move past the Construction Contract and allow permanent financing to proceed, even if the details were not made clear until the night of the closing on February 28, 2014.

Second, we agree with the trial court's conclusions of law that the Construction Contract and Invoice #730 are legally irrelevant in the instant matter concerning the Promissory Note. Eagle sued for the enforcement of the Promissory Note entered into on February 28, 2014, not the Construction Contract of February 2, 2013. The terms of the Promissory Note are clear and unambiguous. Neither the $45,000 sum nor the Construction Contract was explicitly or implicitly mentioned or referenced anywhere in the Promissory Note. A party cannot use parol evidence to modify or alter the terms of a clear and unambiguous contract. *Campora v. Ford*, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003); *Lapinsky v. Cook*, No. E2015-00735-COA-R3-CV, 2016 WL 5385849, at *13 (Tenn. Ct. App. Sep. 26, 2016).

Therefore, "the literal meaning of the language controls the outcome of [this] contract dispute[]." *Planters Gin Co.*, 78 S.W.3d at 890. "[W]here a contract is unambiguous, the court may not look beyond its four corners to ascertain the parties'

intention." *Williams*, 2014 WL 5308634, at *4) (citations omitted). *See also Clifton v. Hurt*, No. 01-A-01-9403-CH00105, 1994 WL 441011, at *1–2 (Tenn. Ct. App. Aug. 17, 1994) (holding that the promissory note and construction contract were two separate, unambiguous transactions); *Quebecor Printing Corp. v. L & B Mfg. Co.*, 209 S.W.3d 565, 583 (Tenn. Ct. App. 2006) (holding that a second settlement contract "extinguished" the first).

For the foregoing reasons, we hold that the Construction Contract should not be incorporated into the Promissory Note nor should the $45,000 payment made pursuant to the Construction Contract be credited toward the Promissory Note. Where there is no "fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought to be harsh or unjust." *Kafozi*, 184 S.W.3d at 700 (internal citations omitted).

Furthermore, although not present in the Orrs' original answer, we agree with the trial court's findings of no duress or fraud by Eagle against the Orrs. The record is devoid of evidence suggesting that Eagle acted fraudulently or in bad faith. Eagle continued work on the house even after the Orrs defaulted, and Mr. Orr made repeated assurances to Mitchell that he would obtain funding.

We note that the trial court's serious admonitions against Eagle are also well founded. While our precedent does not allow us to grant the Orrs relief in the instant matter, Eagle would do well to revise the obvious ambiguity in its construction contracts and invoices, especially concerning the initial payment characterized as a deposit on one hand and a retainer on the other. Further, Eagle should seek to improve the promptness and method by which its invoices are communicated to its clients, especially when a client defaults. Such serious deficiencies in drafting and poor communication on Eagle's part should be ameliorated with haste to prevent serious financial harm to future clients.

Last, we approach the issue of whether the court abused its discretion in denying the motion to amend. A party may amend its pleadings only by consent of the "adverse party or by leave of the court; and leave shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01. In determining whether to grant leave to amend, the court should consider the following factors: "undue delay, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments and futility of the amendments." *Pratcher*, 407 S.W.3d at 741.

Here, the Orrs filed their initial answer in November 2014. They obtained counsel on December 4, 2015, approximately five months before trial, but did not file a motion to amend until two weeks before trial. While some leeway should be given to pro se litigants, the circumstances presented here support a finding of undue delay. Accordingly, we conclude that the court did not abuse its discretion in denying the motion to amend.

- 10 -

## V. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed, and the case is remanded for enforcement of the judgment and such further proceedings as may be necessary. Costs of this appeal are taxed to appellants, Michael J. Orr and Mary E. Orr.

_____
JOHN W. MCCLARTY, JUDGE